### ALFRED GILL *vs.* JOHN C. PALMER.

The defendant was indorser of a bill of exchange drawn by *A* on *B* and accepted by *B*. Notice of the non-payment of the bill by the acceptor was sent to him, which described the bill as "*drawn by you,*" and wholly omitted the name of the real drawer, but otherwise described the bill correctly and as indorsed by the defendant. Held, that the notice was sufficient to charge the defendant, in the absence of proof on his part that he had drawn any such bill, or that he had indorsed any other paper of the same general description which could have been mistaken by him for the bill in question.

ASSUMPSIT, brought against the defendant as indorser of the following draft:—

"ROBBINS & LAWRENCE CO., WINDSOR, VT., Oct. 6, 1856.

"$3000. Four months after date, pay to the order of Robbins & Lawrence, three thousand dollars, value received and charge to the account of

The ROBBINS & LAWRENCE CO.,

W. CURRIER, Pres."

"To CHARLES ST. JOHN, 142 Water st., New York."

"Accepted, CHARLES ST. JOHN."

[Indorsed] "ROBBINS & LAWRENCE."

"J. C. PALMER."

On the trial, upon the general issue closed to the court, the plaintiff offered the deposition of the notary who protested the draft, who deposed therein to the protest, and to notice to the

defendant in the usual form ; and it appeared by the cross-examination of the deponent, that a certain notice in writing, produced on such cross-examination by the defendant, was sent from the office of the notary to the defendant on the 10th day of February, 1857, and that but one notice was so sent, which notice was inclosed in an envelope directed to " John C. Palmer, Hartford, Connecticut," and was in the following words :—

" NEW YORK, Feb. 9th, 1857.

" $3000. Please to take notice that a bill for 3000 dollars, drawn by you on, and accepted by, Charles St. John, dated Windsor, Vermont, Oct. 6, 1856, and indorsed by you, is this day protested for non-payment, and that the holders look to you for payment thereof—payment having been duly demanded and refused. (Signed by the notary.)

To Mr. JOHN C. PALMER, Hartford, Connecticut."

The defendant, after the plaintiff had rested his case, offered himself as a witness, and testified that the notice above described was the only notice received by him at that time, or at any time near that time, and that the same was taken by him from the post-office at Hartford, on the 10th day of February, 1857. The plaintiff's counsel thereupon conceded that the notice thus received must be considered as the notice actually sent by the notary, and as the only notice sent to the defendant of the protest of the draft. But they then, for the purpose of showing that the notice was fair and reasonable, and that it was notice in fact to the defendant of the protest of the draft, offered evidence to show that there were no other notes or drafts upon which the defendant was obligated as indorser or otherwise, which could have been confounded by him with the draft thus protested, and that in the circumstances the defendant could not reasonably have been misled, and that he was not in fact misled, by the misdescription of the draft in the notice.

The counsel for the defendant objected to the evidence thus offered, on the ground that the notice was upon its face fatally defective, and was in law insufficient. The court admitted the evidence, and rendered judgment for the plaintiff, and the defendant moved for a new trial.

*L. F. Robinson,* in support of the motion, cited Chitty on Bills, 466; *Ransom* v. *Mack,* 2 Hill, 587; *Shelton* v. *Brathwaite,* 7 Mees. & Wels., 436; *Stockman* v. *Parr,* 11 id., 809; *Mills* v. *Bank of U. States,* 11 Wheat., 436; *Home Ins. Co.* v. *Green,* 19 N. York, 518; *Mellersh* v. *Rippen,* 7 Exch., 578.

*Hooker* and *McFarland,* contra, cited Byles on Bills, 203 *et seq.*; Chitty on Bills, 501, and notes; Story on Bills, § 301; *Kilgore* v. *Bulkley,* 14 Conn., 362; *Smith* v. *Whiting,* 12 Mass., 6; *Gilbert* v. *Dennis,* 3 Met., 498; *Reedy* v. *Seixas,* 2 Johns. Cas., 337; *Ontario Bank* v. *Petrie,* 3 Wend., 456. *Bank of Rochester* v. *Gould,* 9 id., 279; *Cook* v. *Litchfield,* 5 Sandf., 330; *Cayuga County Bank* v. *Warden,* 1 Comst., 413; *McKnight* v. *Lewis,* 5 Barb., 681; *Crocker* v. *Getchell,* 23 Maine, 392; *Mills* v. *Bank of U. States,* 11 Wheat., 431; *Dennistoun* v. *Stewart,* 17 How., 606; *Rowan* v. *Odenheimer,* 5 Sm. & Marsh., 44; *Reed* v. *Reed,* 11 Texas, 585; *Manchester Bank* v. *White,* 10 Foster, 456; *Sasscer* v. *Farmers' Bank,* 4 Maryl., 409; *Snow* v. *Perkins,* 2 Mich., 242; *Youngs* v. *Lee,* 2 Kernan, 553; *Bank of Alexandria* v. *Swann,* 9 Pet., 34; *Ross* v. *Planters Bank,* 5 Humph., 335; *Mellersh* v. *Rippen,* 11 Eng. L. & Eq., 599; *S. C.,* 7 Exch., 578; *Shelton* v. *Brathwaite,* 7 Mees. & Wels., 436; *Stockman* v. *Parr,* 11 id., 809.

ELLSWORTH, J. A new trial is asked for in this case on account of the admission of parol evidence, introduced to make more complete a certain written notice of the non-payment of a bill of exchange. The notice is recited verbatim in the motion, and no question is made but that it was duly transmitted and received.

The plaintiff, to guard against the contingency that the writing, by itself, might not be held sufficiently definite and accurate to constitute notice as to the bill in suit, introduced further evidence to show that the defendant must, under the circumstances, have had sufficient knowledge that this was the identical bill, of the dishonor of which it was intended to give him notice. Upon the question of the rightful admission of

this evidence in the court below, much argument has been had here, and many authorities have been cited by the counsel; but not finding it necessary, in the view we take of the case, to decide this particular question, we have not turned our attention to it at all, but shall dispose of the case on another ground.

We are all satisfied that the written notice is sufficient of itself, especially as the defendant did not attempt to prove that he had drawn or indorsed any other bill to which the notice received by him could be applied, or that in fact any doubt or hesitation could justly have existed in his mind as to what bill was intended by the notice.

The law prescribes no exact form of notice. All the books agree that, if it affords reasonable information what bill it is that has been demanded and is dishonored, it will suffice; leaving every case to depend on its own circumstances as to the precise form and fulness of the notice. It was so decided in the case of *Kilgore* v. *Bulkley*, 14 Conn., 362. Most obviously, knowledge in fact in the person notified is the great and important point to be established, and this is to be made out, as in other cases, by evidence which is satisfactory to the mind, although in the law-merchant, in certain cases, definite and technical rules prevail for the sake of greater certainty and dispatch. As we have said, we do not know of any technical rule as to the form of communicating the knowledge, nor have we seen any laid down in the books. It is not even of necessity communicated by writing. In some cases it may be given to the indorser in person, by word of mouth, and this, whether notice is a question of law, to be decided upon facts conceded, or by a jury upon the evidence given in the trial.

Notice to an indorser may contain more than is necessary, and more than is true, and yet be good enough. It may contain less than the whole truth, that is, less than what an exact copy of the note if sent to the indorser would give, and be good. This must necessarily be so, from the principle of law that no form of notice is prescribed, and that there is no general rule with regard to the notice other than the one already mentioned. Thus, the omission of the date of the bill, the

stating of a false date, or an inaccurate statement of the amount, is neither of them of course fatal to the notice, as has been repeatedly held, if the notice be otherwise sufficiently full to give the needed information. Certainly the bill need not be, and generally is not, copied verbatim into the notice. Enough only is stated to satisfy the purpose for which it is given. It must be " just, reasonable and intelligible," as said by Storrs, J., in the case of *Kilgore* v. *Bulkley*, before referred to. This rule was, we think, sufficiently complied with in the case before us. It is true that a notice may be so essentially untrue and imperfect as to afford no reasonable information, and only delude and perplex the indorser. He may not, after all, be able to discover from the notice what bill it is that is said to have been indorsed by him and is now dishonored ; in which case the notice is fatally defective, and in a clear case the court may so declare it to be, unless the plaintiff can introduce other proof, and may do so consistently with the principles of law, to identify the bill, or otherwise bring home to the indorser all reasonable knowledge to acquaint him with his situation as to the bill in question. In the case of *Home Insurance Co.* v. *Green*, in the Court of Appeals of New York, reported in 19 N. York R., 518, it was held that, in the case of a note of hand, if the name of the maker of the note is omitted from the notice, it is fatally defective. Whether this is correct as an absolute rule of law, or whether further evidence could have been introduced by the plaintiff to show that the indorser in fact had satisfactory knowledge of the note which was dishonored, we will not undertake to decide. It is not the case before this court, which is that of an accepted bill, and the name of the acceptor is given. Here the notice states, not only the name of the acceptor of the bill, who is the real debtor, and whose default the indorser was specially concerned to know, but also the true date of the bill, the place where drawn, the amount, the indorsement of the defendant, and the time it fell due, together with a demand upon the acceptor for payment and a refusal of payment by him. It incorrectly states that the defendant is the drawer as well as indorser, which the defendant knew at once was a mistake ; and we feel

that he could not thereby have been led into a misapprehension as to the particular bill intended, especially as he did not attempt to show that he had ever made any such bill, or had indorsed any other like it which could have been mistaken by him for the one in question.

We think the rule as approved by this court in the case of *Kilgore* v. *Bulkley*, is substantially the correct one. In the superior court Storrs, J., told the jury that " notwithstanding the variances between the instrument and the description thereof in the notice, if the instrument was intended to be described in and the defendant was not misled or deceived by the notice as to the instrument intended by it, it was sufficient." Possibly this rule as a general one may need some qualification, but when the case was reviewed in this court, the judge who gave the reasons for its decision says: "The rule given to the jury was just, reasonable and intelligible, and is fully sustained by the authorities;" citing *Reedy* v. *Seixas*, 2 Johns. Cas., 337 ; *Mills* v. *Bank of the United States*, 11 Wheat., 431 ; *Bank of Rochester* v. *Gould*, 9 Wend., 279; Chitty on Bills, 365 ; Byles on Bills, 205, 6.

In the case of *Mills* v. *The Bank of the U. States*, Story, J., says: " The first objection proceeds upon a doctrine which is not admitted to be correct. No form of notice to an indorser has been prescribed by law. The whole object of it is to inform the party to whom it is sent, that payment has been refused by the maker and that he is expected to pay." And he further says : " The objection of misdescription may be disposed of in a few words. It can not for a moment be maintained that any variance, however immaterial, is fatal to the notice. It must be such a variance as conveys no sufficient knowledge to the party of the particular note which has been dishonored. If it does not mislead him, if it conveys to him the real fact without any doubt, the variance can not be material, either to guard his rights or avoid his responsibilities."

We approve of the foregoing view, and need only add to what has been said by Judge Story, that while we favor the establishing of definite and exact rules in mercantile and commercial questions so far as practicable and consistent, lest there

be ruinous uncertainty and delay in the multiplied transactions of trade and commerce, we can not favor such as are not founded in practical good sense and morality. Such we think would be a rule that should hold the notice in question inadequate to inform the defendant of the particular bill which had been dishonored.

We therefore do not advise a new trial.

In this opinion the other judges concurred.

New trial not advised.